IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| AFY, ) | 4:12CV3153 |
| ) | |
| Debtor, ) | |
| ) | |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| NORTHERN PLAINS FEEDERS, INC., ) | |
| DK CATTLE, INC., AND DAKOTA- ) | |
| NEBRASKA FEEDERS, INC., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH H. BADAMI, TRUSTEE, ) | |
| ) | |
| Appellee.          . ) | |
| ) | |

Northern Plains Feeders, Inc. (Northern Plains Feeders), DK Cattle, Inc. (DK Cattle), and Dakota-Nebraska Feeders, Inc. (Dakota-Nebraska Feeders) (collectively, "the appellants" or "the claimants") appeal an order of the bankruptcy court sustaining the trustee's objections to their claims and disallowing those claims. See In re: AFY, No. BK 10-40875, 2012 WL 2050376 (Bankr. D. Neb. June 6, 2012) (Bankruptcy Filing No. 618.)  The trustee has elected to have the appeal heard by this court.  (ECF No. 4.)  For the following reasons, I shall affirm the bankruptcy court's decision.

**I. BACKGROUND**

On March 25, 2010, the debtor, AFY, Inc., filed a voluntary petition in the United States Bankruptcy Court for the District of Nebraska, seeking relief under Chapter 11 of the United States Bankruptcy Code.  Joseph H. Badami was appointed as the Chapter 11 trustee on May 6, 2010, and on September 2, 2010, the bankruptcy court granted the trustee's unopposed motion to convert the case into a Chapter 7 proceeding.  Badami has continued as the Chapter 7 trustee.

1

AFY, Inc.'s Schedule F, which lists "creditors holding unsecured nonpriority claims," includes a claim for $250,000.00 by Northern Plains Feeders, a claim for $101,912.00 by DK Cattle, and a claim for $54,931.00 by Dakota-Nebraska Feeders.[1] (Bankruptcy Filing No. 4 at 20.) The trustee objected to these claims, (see Bankruptcy Filing Nos. 237-239), and the bankruptcy court sustained his objections, noting that "[n]o timely resistence/objection [to the trustee's objections] was filed," (Bankruptcy Filing Nos. 275-277).

Thereafter, Northern Plains Feeders filed Proof of Claim (POC) No. 27 in the amount of $250,000.00, DK Cattle filed POC No. 28 in the amount of $101,912.00, and Dakota-Nebraska Feeders filed POC No. 29 in the amount of $54,931.00. (See Claims 27-1, 28-1, 29-1.) The trustee objected to each of the POCs, arguing that "the claim[s] lack[] supporting documentation" and noting that objections to these claims had already been sustained. (Bankruptcy Filing Nos. 467-469.) The claimants filed resistances to the trustee's objections, (Bankruptcy Filing Nos. 486-488), and motions for reconsideration of the bankruptcy court's order sustaining the trustee's prior objections, (Bankruptcy Filing Nos. 489-491). (See also Bankruptcy Filing Nos. 513-515.) The bankruptcy court scheduled a hearing on the trustee's objections and the claimants' motions for reconsideration for July 20, 2011. (Bankruptcy Filing Nos. 516-521.) In advance of the hearing, counsel for the claimants filed the declaration of Kyle S. Gifford in support of Claims 27, 28, and 29. (Bankruptcy Filing No. 531.) The docket sheet from the bankruptcy court, which has been filed in this case as an attachment to that court's transmittal letter, (ECF No. 3-1), indicates that Gifford's declaration was received into evidence during the July 20, 2011, hearing, (Bankruptcy Filing Nos. 538-540). The docket sheet also indicates that during the hearing, the bankruptcy judge granted the claimants' motions for reconsideration; "vacated and set aside" the orders sustaining the trustee's original objections to the claims listed in Schedule F; and directed the clerk of the bankruptcy court to schedule a trial on the trustee's objections to Claims 27, 28, and 29. (Bankruptcy Filing Nos. 538-540.)

---

[1] Dakota-Nebraska Feeders is referred to as "Dakota Feeders" on a number of the documents included in the record, including Schedule F.

The trial on the trustee's objections to Claims 27, 28, and 29 was held on April 12, 2012. (E.g., Tr., ECF No. 10.) Prior to the trial, the trustee and the claimants filed joint preliminary pretrial statements. (Bankruptcy Filing Nos. 557-559.) In these statements, the trustee asserted that the three claims were "not filed in accordance with the requirements of the Bankruptcy Code and Rules," that the claims were "not supported by appropriate evidence," and that "[t]he Debtor was not indebted to the claimant[s]." (Id.) At the commencement of the trial, the trustee emphasized that because the claims were not filed properly under the bankruptcy rules, there was "no prima facie evidence of a claim that has any type of evidentiary weight." (Tr. at 6, ECF No. 10.) Counsel for the claimants was invited to respond to the trustee's point, and the following exchange occurred between the bankruptcy court and counsel:

> THE COURT: [The trustee's counsel] just said your claims are not entitled to prima facie validity. That's all he was addressing.
>
> [COUNSEL FOR THE CLAIMANTS]: Well, and I agree. But, I think, ultimately, the question is, is the money owed, and - -
>
> THE COURT: Yes, I think that's the ultimate question too. I mean, I agree with that.
>
> [COUNSEL FOR THE CLAIMANTS]: And if we don't get the presumption, that doesn't mean the claims aren't allowed. It depends on what the evidence shows.
> THE COURT: All right, so starting with that issue, I agree that these claims are not entitled to prima facie support of validity. There are two - - well, there's nothing in the claims to give them any sort of prima facie validity, so I think it is up to the claimant to prove the claims. . . .

(Id. at 10-11.) The bankruptcy court then directed counsel for the claimants to proceed to attempt to prove the amounts of the claims. (Id. at 11.)[2]

---

[2] It merits mention that the bankruptcy court also noted that the claimants had filed amended POCs without first obtaining leave, granted the claimants "leave to have filed those out of time," and clarified that "we are going forward on objecting to both of them, because they are not prima facie valid, number one, and number two, it's up to [counsel for the claimants] to prove the claims." (Tr. at 8-9, 11-12, ECF No. 10. See also Claims 27-2, 28-2, 29-2, 29-3.)

The claimants' first witness was Kyle Gifford, who served as the debtor's accountant from approximately 2002 or 2003 until AFY, Inc. filed its bankruptcy petition in March 2010. (Tr. at 20.) Gifford testified that he prepared income tax returns and financial statements for AFY. (Id.) He also prepared a 2010 federal tax return for Northern Plains Feeders using "[d]ocuments from the client," and he listed on Schedule L of that return "an asset of [Northern Plains Feeders] in the form of a loan receivable" in the amount of $250,000. (Id. at 37, 44-45; Bankruptcy Filing No. 597 at 6.) In addition, a 2010 federal tax return prepared by Gifford for Dakota-Nebraska Feeders lists "loans to shareholders" in the amount of $118,000. (Bankruptcy Filing No. 602 at 6.) Neither return indicates that the loans were made to the debtor.

In addition to these tax returns, Gifford prepared two work papers. (Tr. at 39; Bankruptcy Filing Nos. 587-588.)[3] The first of these work papers indicates that Northern Plains Feeders loaned $250,000.00 to AFY, Inc. on March 29, 2007, and that the entire principal remained owing on July 31, 2011. (Tr. at 41; Bankruptcy Filing No. 587.) The second work paper indicates that Dakota-Nebraska Feeders also loaned $250,000 to AFY, Inc. on March 29, 2007, and that a principal balance of $54,931 remained owing on July 31, 2011. (Tr. at 39-41; Bankruptcy Filing No. 588.) However, the first work paper bears a note stating, "This and Dakota-NE (total $500,000) was a result of the need for Bob [(i.e., Robert Sears)] to make an additional capital contribution to satisfy [Farm Credit Services]. Bob owes the below entities, and the money went into AFY, LLC. Currently shown on AFY, Inc.'s [trial balance] as [note payable] - Dakota[-Nebraska Feeders]/Northern [Plains Feeders], but it is Bob's subordinated debt." (Bankruptcy Filing No. 587; see also Tr. at 53-54, 61 (defining abbreviated terms appearing in Exhibit 587).) On cross-examination, Gifford explained that "Farm Credit Services asked that AFY find more capital," and his note "indicates that Dakota-Nebraska Feeders and Northern Plain Feeders loaned money to AFY through Bob to give AFY more liquidity, and . . . I don't know if there were loan documents to support that transfer, but the money was loaned across to AFY related to those to increase its liquidity." (Tr. at 53.) Gifford also clarified that AFY, Inc. and AFY, LLC were "different entities,"

---

[3] It appears that Exhibit 587 is identical to Exhibit 592, and Exhibit 588 is identical to Exhibit 594. (Compare Bankruptcy Filing Nos. 587 & 588 with Bankruptcy Filing Nos. 592 & 594.) Although the parties referred to all four exhibit numbers during the trial, for ease of reference I shall refer only to exhibit numbers 587 and 588.

adding, "The money went into - - AFY, LLC was the primary operating company of the commercial feed yard and when the loan was first made I believe that's where the money went to based on my note on this work paper." (Id. at 54.) The second work paper includes a similarly-worded note, and Gifford testified that his answers to the questions about the note appearing on the first work paper would apply to the note appearing on the second work paper. (Id. at 56.) Gifford also testified that he never saw a note or a canceled check related to any of the loans between the claimants and the debtor. (Id. at 52-53.)

The claimants' next witness was Korley Sears, who testified that he was a co-manager of AFY and the sole stockholder of DK Cattle since 2007. (Tr. at 65.) He added that DK Cattle no longer does business, and it has no assets aside from its claim in this case. (Id. at 66.)

The claimants' third and final witness was Robert Sears, who was a co-manager of AFY, an owner of Dakota-Nebraska Feeders, and an owner of Northern Plains Feeders. (Tr. at 67-68, 70.) He testified that Dakota-Nebraska Feeders and Northern Plains Feeders loaned $500,000 to "Ainsworth Feed Yards." (Id. at 68.) He emphasized that the loans were made directly from Dakota-Nebraska Feeders and Northern Plains Feeders to "AFY," and he disagreed with Gifford's testimony that the loans were made to him (Robert Sears). (Id. at 70-71.) On cross-examination, Robert Sears testified that there are no notes or other documents showing that the amounts were loans. (Id. at 74.)

During the trial, the claimants offered into evidence the same declaration of Gifford that had been received during the July 20, 2011, hearing. (Tr. at 27. See also Bankruptcy Filing No. 531.) The trustee raised hearsay and foundation objections to the declaration, and the bankruptcy court sustained those objections, adding, "We have Mr. Gifford on the stand. You can ask him whatever questions you want." (Tr. at 27-28.) The claimants also offered into evidence the "general ledger" from AFY's accounting system. (Id. at 32. See also Bankruptcy Filing No. 603.) Once again, the trustee raised hearsay and foundation objections, and these objections were sustained. (Tr. at 32-35.)

On June 6, 2012, the bankruptcy court issued an order sustaining the trustee's objections to Claims 27, 28, and 29, and disallowing each of those claims. (Bankruptcy Filing No. 618.) In its order, the bankruptcy court first addressed "whether the proofs of claim at issue were entitled to the evidentiary effect of Bankruptcy Rule 3001(f)," which states, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of

5

the claim." (Id. at 2 (quoting Fed. R. Bankr. P. 3001(f)).) As alluded to previously, the bankruptcy court concluded that the POCs did not constitute prima facie evidence of the validity of the claim. The court explained,

> Each of the claimants is owned, in whole or in part, by Robert or Korley Sears, who also own the shares of AFY. Therefore, each claimant is an "insider" of AFY as defined in 11 U.S.C. § 101(31). Claims asserted by insiders demand close scrutiny. Bankruptcy Rule 3001(a) requires that a proof of claim be a written statement that conforms substantially with the "Official Form," which is Official Form 10. That form requires claimants to attach copies of supporting documents or to explain any failure to attach documents. The claims filed by [the claimants' attorney] failed to attach any supporting documentation or explanation for such failure. If a creditor fails to attach sufficient evidence to establish the validity of its claim, the burden remains with the creditor to prove the validity and amount of its claim. Thus, the claims were not properly filed pursuant to Bankruptcy Rule 3001(a) and are not entitled to the evidentiary effect of Bankruptcy Rule 3001(f). Accordingly, at the commencement of trial, this court ruled that since the claims are not entitled to prima facie evidence of validity, it is the burden of each claimant to prove the validity and amount of each claim.

(Id. at 3 (citations omitted).)

The bankruptcy court then proceeded to discuss the trustee's objections to each of the three claims at issue in this appeal. (See id. at 4-6.) Turning first to DK Cattle's claim for $101,912.00, the court observed that Korley Sears did not testify that AFY owed money to DK Cattle, nor did he provide any testimony about "when or how the debt arose or how it was to be repaid." (Id. at 4.) The court also noted that "Gifford has no personal knowledge of any obligation owed by AFY to DK Cattle, Inc.," that "no bank records or any other documentary evidence was introduced to support any debt owed by AFY to DK Cattle, Inc.," and that the claimants' counsel wrote a post trial brief that "failed to identify any evidence supporting this claim" and "seemed to acknowledge that there is no loan debt owed by AFY to DK Cattle, Inc." (Id.) The bankruptcy court therefore sustained the trustee's objection and denied DK Cattle's proof of claim. (Id.)

The bankruptcy court then analyzed Northern Plains Feeders' and Dakota-Nebraska Feeders' claims jointly. (Id. at 4-6.) First, the court noted that Robert Sears testified that Northern Plains Feeders and Dakota-Nebraska Feeders each loaned $250,000 "to Ainsworth Feed Yards" because "the more money AFY had, the less it had to borrow from Farm Credit." (Id. at 4.) The court added,

> Unfortunately, in his testimony Robert was never clear about which entity he was referencing at any given time. Throughout this bankruptcy case, Robert and others have represented that the Debtor, AFY, Inc., was the owner of the property that was known as the Ainsworth Feed Yard. The entity Ainsworth Feed Yards, LLC was the operating entity – it ran the feed yard and was a co-borrower on the Farm Credit debt. At times during his testimony, it seemed Robert (as well as everyone else) failed to distinguish between the two and treated them as one entity.

(Id.) The court then discussed Gifford's work papers, noting that they were ambiguous and that it was "unclear how or if the money actually moved from the claimants to AFY, to (possibly) AFY, LLC." (Id. at 5.) The court also noted that "Gifford was not able to explain those ambiguities with any personal knowledge," that "no testimony was presented from anyone with personal knowledge of the preparation of AFY's internal accounting records," and that there were no bank records, canceled checks, or any other documents concerning the transactions. (Id.) The court concluded,

> Thus, the only evidence supporting this claim is Robert's testimony that the claimants "loaned" the money to AFY and the accounting work papers indicating the obligations may have been treated as note payable to the claimants. However, the accounting work papers also have specific language indicating the money was a capital contribution required by a lender. They further indicate AFY did not even receive the money; rather it went to "AFY, LLC" and was "Bob's subordinated debt." . . . In any event, the ultimate burden of persuasion is on the claimants to establish their entitlement to the claims. The claimants have failed to meet that burden of persuasion as to the validity and amount of their claims. Therefore, the trustee's objection is sustained.

(Id. at 4-5 (citation and footnote omitted).)

The claimants filed a notice of appeal in the bankruptcy court on June 19, 2012. (See ECF No. 3; Bankruptcy Filing No. 623.) As noted previously, the trustee elected to have the appeal heard by the district court, (see ECF No. 4 (citing 28 U.S.C. § 158(c)(1)(B))), and the notice of appeal was filed in this court on July 26, 2012, (see ECF No. 1). This court has jurisdiction of the appeal under 28 U.S.C. § 158(a)(1).

## II.  ANALYSIS

The claimants' statement of the issues on appeal identifies six separate issues. (See Appellant's Statement of Issues and Designation of Record at 1-2, ECF No. 2-1; Appellant's Br. at 1, ECF No. 5; Bankruptcy Filing No. 639 at 1-2.) In essence, however, there are only three broad issues: 1) whether the bankruptcy court erred by shifting the burden of production to the claimants,

7

2) whether the bankruptcy court erred by excluding Gifford's declaration and AFY's general ledger from the evidence at trial, and 3) whether the bankruptcy court erred by sustaining the trustee's objections to the claims.

I review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Falcon Products, Inc., 497 F.3d 838, 840-41 (8th Cir. 2007 (quoting In re Fairfield Pagosa, Inc., 97 F.3d 247, 252 (8th Cir. 1996)); see also Fed. R. Bankr. P. 8013. I review its evidentiary rulings for abuse of discretion. See, e.g., In re McGinnis, 296 F.3d 730, 732 (8th Cir. 2002); First Bank Investors' Trust v. Tarkio College, 129 F.3d 471, 476 (8th Cir. 1997).

### A. The Claimants' Burden of Production

One of the primary issues raised in this case is whether it was appropriate for the bankruptcy court to place the initial burden of producing evidence of the amount and validity of the claims upon the claimants or, conversely, whether the bankruptcy court should have first required the trustee to produce evidence supporting one of the "objections" set forth in 11 U.S.C. § 502(b). (See Appellants' Statement of the Issues and Designation of Record at 2 ¶ 6, ECF No. 2-1; Appellants' Br. at 1 ¶¶ 1-2, ECF No. 5.) There appears to be no dispute that if a "proof of claim conforms with the rules it constitutes prima facie evidence of the claim," and the burden "then shifts to the objector to establish that the claim fits within one of the exceptions set forth in [§] 502(b)." In re Dove-Nation, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). Thus, as a threshold matter I must address the claimants' arguments that the bankruptcy court erred by concluding that POCs 27, 28, and 29, as amended, did not constitute prima facie evidence of the validity of the claims. (Appellants' Br. at 24-26, ECF No. 5. See also id. at 1 ¶ 5; Appellants' Statement of the Issues and Designation of Record at 2 ¶¶ 4-5, ECF No. 2-1.)

According to the claimants, the bankruptcy judge improperly concluded that the POCs were not prima facie evidence of the validity of their claims because (1) contrary to the bankruptcy judge's finding, the amended POCs "did have attached explanations for the absence of supporting documents"; (2) there is no evidence that any of the claims were based on a writing, and therefore the POCs do not violate Federal Rule of Bankruptcy Procedure 3001(c)(1); and (3) "the objections of the Trustee and the evidence supporting those objections were insufficient to raise a legitimate dispute about whether [POCs] 27, 28, and 29 should be disallowed." (Appellants' Br. at 24-26, ECF No.5; Appellants' Reply Br. at 14, ECF No. 9.) Though the claimants' arguments are not entirely

without merit,[4] they cannot overcome the fact that the claimants' attorney conceded during trial that the POCs were not prima facie evidence of the validity of the claims. (See Tr. at 10-12.) Generally, issues that are conceded at trial cannot be raised on appeal. Cf. In re Barry, 201 B.R. 820, 825 (C.D. Cal. 1996). Although there are exceptions to this rule, see id. (stating, inter alia, that "an issue that the appellant conceded or neglected below" may be revisited on appeal if the issue "is one of law and does not rely on the factual record established in the lower court"), I am not persuaded that the claimants should be allowed to revive the issue under the circumstances presented here. Indeed, by conceding the issue, the claimants cut short the bankruptcy judge's questions on the subject and relieved the trustee from pressing the matter. (See Tr. at 10-12.) Thus, I shall hold the claimants to their concession that the POCs do not constitute prima facie evidence of the validity of their claims.[5]

In their reply brief, the claimants argue that the bankruptcy court simply "announced" that POCs 27, 28, and 29, as originally filed and as amended, "are not prima facie valid," and "[c]ounsel for the Appealing Claimants had no choice but to go forward." (Appellant's Reply Br. at 11, ECF No. 9.) This argument is belied by the trial transcript, which clearly shows that the issue was not resolved by an "announcement." On the contrary, the claimants' counsel was invited to respond to the trustee's argument that the POCs were not prima facie evidence of the validity of the claims, and counsel clearly stated, "I agree." (Tr. at 10.) Counsel added that "if we don't get the presumption, that doesn't mean the claims aren't allowed." (Id.) The bankruptcy judge interpreted counsel's

---

[4] The claimants are correct that two of the amended POCs do offer brief explanations for the absence of supporting documents (i.e., "If any promissory note ever existed, it is lost and, after reasonable efforts, cannot be found."). (See Appellants' Br. at 25, ECF No. 5.) Thus, the bankruptcy judge erred by finding that the claims failed to provide any explanation for the unavailability of the documents. (See Bankruptcy Filing No. 618 at 3.) Because the bankruptcy judge apparently did not recognize that these brief explanations were provided on the amended claim forms, he did not make any specific findings as to whether the explanations were sufficient to conform the POCs substantially to the official forms. Fed. R. Bankr. P. 3001(a).

The claimants' argument about the sufficiency of the trustee's objections will be addressed later in this memorandum.

[5] It merits mention, however, that counsel did not concede that the claimants bore the initial "burden of proof." (Tr. at 78-79.) This issue will be addressed presently.

statements to mean that there was no dispute that the claims "are not entitled to prima facie support of validity," and after discussing the amendments to the POCs, the judge clarified that he believed that the amended claims also were "not prima facie valid." (Tr. at 11-12.) Counsel did not question, object, or otherwise voice any concern about the bankruptcy judge's plan to proceed based on the premise that none of the POCs, as amended, constituted prima facie evidence of the validity of the claims. Nor did counsel withdraw his concession or attempt to clarify that his concession pertained only to the "original" claims, and not the amended claims. In short, I cannot accept the claimants' argument that they had "no choice but to go forward" without having an opportunity to argue that the POCs should be considered prima facie evidence of the claims' validity. They conceded the issue, and it will not be revisited on appeal.

Though the bankruptcy court did not err in finding that the POCs were not prima facie evidence of the validity of the claims, it remains to be determined whether the court properly concluded that as a consequence of this finding, the claimants bore the initial burden of producing evidence supporting the validity of their claims at trial. The trustee maintains that the bankruptcy court acted properly, arguing that because the POCs "were not prima facie evidence of the validity of the Claimants' claims," the claimants retained the burden "to prove their claims by a preponderance of the evidence." (Appellee's Br. at 26, ECF No. 6.) He adds that because the claimants failed to provide "credible evidence that their claims were in fact valid," "the burden never shifted to the Trustee to prove one of the substantive grounds in §§ 502(b)(1) through 502(b)(9)." (Id.) The claimants argue that the initial burden of production rested with the trustee, and they submit that their burden "was not activated because the Trustee did not first produce substantial evidence supporting a § 502 objection." (Appellants' Reply Br. at 5, ECF No. 9.)

The claimants' position is consistent with In re Dove-Nation, 318 B.R. 147 (B.A.P. 8th Cir. 2004). In Dove-Nation, the Bankruptcy Appellate Panel of the Eighth Circuit held that the claimant's proofs of claim "complied with the spirit of the applicable rules and as such constituted prima facie evidence of the validity and amount of the claims." 318 B.R. at 152. The panel added, however, that "even if the claims had not substantially complied with Rule 3001, the claims are still allowed claims under [11 U.S.C. § 502(a)] unless the Debtor establishes an exception under [§ 502(b)]. Id. The panel continued, "Even if the proofs of claim are not entitled to prima facie validity, they are some evidence of the Claimant's claims. Here, the Debtor never presented any

10

evidence to contradict the claims, much less any evidence that the claims fall within one of the exceptions set forth in Section 502(b); therefore, the claims' validity stands." Id. (citing In re Cluff, 313 B.R. 323, 340 (Bankr. D. Utah 2004)). In short, although its analysis appears to be dicta, the panel found that the objecting party bears the initial burden of (1) raising an objection under § 502(b), and (2) presenting evidence supporting that objection, even if the POCs do not constitute prima facie evidence of the validity of the claims. Although the claimants recognize that Dove-Nation is not controlling authority, they submit that its analysis should be applied in this case. (Appellants' Br. at 14-18, ECF No. 5. See also Appellants' Reply Br. at 5, ECF No. 9 ("The burden of Appealing Claimants to proceed was not activated because the Trustee did not first produce substantial evidence supporting a § 502 objection.").)

In re Porter, 374 B.R. 471 (Bankr. D. Conn. 2007), rejects the view articulated in Dove-Nation. In Porter, the bankruptcy court first acknowledged that "the only substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code"; thus, a POC's failure to conform to the bankruptcy rules, which are procedural, "is not a substantive ground for disallowing a claim." Id. at 480. The court also found, however, that an entity should be able to "object on the grounds that the proof of claim is insufficient (when taken together with the objector's then-existing knowledge base) for the objector to concede the validity of the claim asserted." Id. at 482. The court then discussed the significance of this type of "Insufficient Doc. Objection" when the proofs of claim do not enjoy the benefit of "the Presumption" (i.e., the POCs do not constitute prima facie evidence of the claims' validity). Id. at 479, 480, 482. The court stated,

> Some courts hold that, even if the Presumption does not apply, the proof of claim still is some evidence of the validity of the claim which shifts the burden of production to the objector to go forward with at least some evidence of the claim's invalidity. See, e.g., Dove–Nation, 318 B.R. at 152; Cluff, 313 B.R. at 340. As noted in [In re Jorczak, 314 B.R. 474 (Bankr. D. Conn. 2004)], this court joins those courts that reject that view and hold that, if the Presumption does not apply, the burden of production is on the creditor. See, e.g., In re Kirkland, 361 B.R. at 203 ("When a claim lacks prima facie validity, the claimant cannot rest on its proof of claim, but must come forward with sufficient evidence of the claim's validity and amount."); In re Tran, 351 B.R. at 447 ("The issue is not whether the proofs of claim constitute 'some' evidence, but whether they constitute 'prima facie evidence' which, if not rebutted, establishes debtor's liability for the claim [in the face of an objection].").

11

> The court appreciates that the Dove–Nation view originates from a desire to deal with potential abuses such as when a debtor lodges an Insufficient Doc. Objection when he or she knows that the claim under attack is valid. (For example, in Dove–Nation the chapter 13 debtor conceded that there was no Section 502 basis for disallowance of the claim. See id., 318 B.R. at 150–51.) As indicated in Jorczak, this court agrees that an inquiry may be appropriate if circumstances indicate potential objector bad faith. Typically, if the Insufficient Doc. Objection has been made by a trustee, no inquiry need be made.

Porter, 374 B.R. at 483 (footnote omitted).

After careful consideration, I find that Dove-Nation is clearly distinguishable from the instant case, and therefore its rule should not be applied here. First, the POCs at issue in Dove-Nation were accompanied by "accounting summaries" and a notice stating that monthly accounting statements would be made available on request, and the panel found that the POCs were not deficient. 318 B.R. at 149, 152. Here, in contrast, the POCs are wholly lacking in documentary support, even after their amendment.[6] Second, as the bankruptcy court recognized in Porter, 374 B.R. at 483, the facts in Dove-Nation suggested that the debtor's objections may have been made in bad faith. In Dove-Nation, the creditor's claims corresponded to debts listed in the schedules that the debtor filed with her voluntary petition for relief under Chapter 13, and the debtor conceded that she had no objections under § 502(b). Nevertheless, the debtor amended her schedules to list the debts as "disputed" and tried to avoid them based on an arguable technical deficiency in the claim forms. See Dove-Nation, 318 B.R. at 1448-49, 151-52. In the present case, there is no indication that the objections were made in bad faith, and the trustee has not conceded that he lacks § 502(b) objections to the POCs. Third, and perhaps most significantly, in this case the claimants and the debtor are "insiders," and the objections have been raised not by the debtor, but by the Chapter 7 trustee.

Dove-Nation cites In re Cluff, 313 B.R. 323, 340 (Bankr. D. Utah 2004), for the proposition that the burden of producing evidence supporting an objection to a claim remains with the debtor even when the claim lacks "prima facie validity." See 318 B.R. at 152. But Cluff cautions that this rule should not be applied in cases such as the one now before me:

> As a final note, it is important to distinguish these Chapter 13 cases from Chapter 7 or 11 cases in which a trustee reviews a proof of claim asserting that the debtor owes

---

[6] I note in passing that the claimants do not indicate whether any of the loans were oral or based on a writing.

> a debt, but the claim does not attach documents supporting the claim. Unless claims are already listed as disputed, unliquidated, or contingent on a debtor's statements and schedules, a Chapter 7 or 11 trustee must examine a debtor's books and records to determine which claims are truly owed and which claims are objectionable. The Chapter 7 or 11 trustee is not privy to the personal history of the debtor and does not have first-hand knowledge of the debtor's debts. A mere formal objection from a Chapter 7 or 11 trustee does not raise the same issues of bad faith which may arise when a debtor, who has personal knowledge of a debt and who has admitted to that debt, later objects to the undisputed claim based on a technicality.

313 B.R. at 343.

The trustee objected to POCs 27, 28, and 29 on the grounds that the claims were not properly filed, the claims were not supported by evidence, and the debtor owed no debt to the claimants. (Bankruptcy Filing Nos. 557-559.) The first two of these objections are "formal" or "procedural" (as opposed to "substantive"), but they are the sort of objections described favorably in Porter and Cluff, and they properly raised the issue of whether the POCs constituted prima facie evidence of the validity of the claims. After the bankruptcy court concluded that the POCs did not constitute prima facie evidence of the claims' validity, it properly directed the claimants to proceed first at trial to produce evidence supporting the validity of their claims. E.g., Porter, 374 B.R. at 483; Cluff, 313 B.R. 343.

The claimants argue that the bankruptcy court's decision must be reversed because "the sole grounds for objecting to claims are contained in § 502(b)(1) through (9) of the bankruptcy code," and "the trustee failed to allege and prove any of the substantive grounds under § 502(b)(1) through (9)." (Appellants' Br. at 13, 18, ECF No. 5. See also id. at 13-24; id. at 1 ¶¶ 1-2; Appellants' Statement of Issues and Designation of Record at 2 ¶ 6; Appellants' Reply Br. at 1-7, ECF No. 9.) To the extent that the claimants argue that the trustee failed to allege any substantive objection (i.e., one based on the exceptions listed in § 502(b)), their argument must be rejected. Section 502(b)(1) states that the court shall allow a claim "except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." As I noted above, the trustee objected to the claims on the ground that no debt existed, and I agree with the trustee that "[i]t is axiomatic that a debt which does not exist cannot be enforced." (Appellee's Br. at 25, ECF No. 6.) Also, to the extent that the claimants argue that the bankruptcy court should have required the trustee to

13

proceed first at trial to produce evidence supporting his substantive objection, the claimants' argument must be rejected for the reasons explained above (i.e., in this particular case, the initial burden of producing evidence of the validity of the claims was properly placed upon the claimants at trial).

Once the issue of the claims' validity was put to trial and evidence was received on the trustee's substantive objection, it seems to me that further shifting of burdens between the trustee and the claimants became irrelevant because the claimants retained the ultimate burden of proving their claims by a preponderance of the evidence. Cf. In re West Tech, Ltd., 882 F.2d 323, 325 (8th Cir. 1989) (citing In re Fidelity Holding Co., 837 F.2d 696, 697–98 (5th Cir.1988)). In Part II.C. below, I shall address whether the court erred by sustaining the trustee's objections and disallowing the claims.

In summary, after de novo review, I find that because the POCs filed by the claimants did not constitute prima facie evidence of the claims' validity, the claimants bore the initial burden of producing evidence of the validity of their claims at trial.

### B. The Bankruptcy Court's Evidentiary Rulings

The claimants argue that the bankruptcy court abused its discretion by excluding Gifford's declaration and AFY's ledger from the evidence at trial. (See, e.g., Appellants' Statement of Issues and Designation of Record at 2 ¶ 3, ECF No. 2-1.) I disagree.

The trustee objected to Gifford's declaration on foundation and hearsay grounds, and the bankruptcy judge sustained these objections while also noting that Gifford was available to answer the claimants' questions. (Tr. at 27-28. See also Bankruptcy Filing No. 610 at 2.) The bankruptcy judge's ruling is consistent with the fundamental principle that courts are "unwilling to countenance the general use of prior prepared statements as substantive evidence," except in certain limited circumstances. Fed. R. Evid. 801, advisory committee notes (1972 proposed rules). See also Fed. R. Civ. P. 43(a), (c) (indicating that while motions may be heard on affidavits, at trial a witness's "testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise").[7] The claimants offered

---

[7] Federal Rule of Bankruptcy Procedure 9017 states that Federal Rule of Civil Procedure 43 applies "in cases under the Code."

Gifford's entire declaration as substantive evidence of the matters stated therein even as Gifford stood ready to testify at trial. The bankruptcy judge did not abuse his discretion by refusing to receive the declaration at the time it was offered.

Citing Federal Rules of Evidence 801(d)(1)(A) and (d)(2)(D), the claimants submit that the declaration is not hearsay, and therefore it should have been received by the bankruptcy court. (Appellants' Br. at 27-30, ECF No. 5.) Rule 801(d)(1)(A) states that if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition," the prior statement is not hearsay. This rule is inapplicable here because Gifford's declaration was not a prior statement "given under penalty of perjury at a trial, hearing or other proceeding or in a deposition." Although the declaration was received into evidence at a hearing on a motion to reconsider, the statements made therein were not "given" at the hearing. Moreover, the claimants offered the declaration in its entirely without first establishing that it contained any statement that was inconsistent with Gifford's trial testimony.[8] In other words, the foundation required under Rule 801(d)(1)(A) simply was not laid.

Rule 801(d)(2)(D) states that if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed," the prior statement is not hearsay. The claimants' argue that Gifford's declaration "was the statement of an opposing party," i.e., the trustee, because "Gifford was the CPA retained by the Trustee in AFY's case at the time Gifford made the Declaration." (Appellants' Br. at 30, ECF No. 5.) Gifford did testify that sometime after March 25, 2010, he was retained by the trustee to serve as his accountant. (Tr. at 25.) The Eighth Circuit has held, however, "that party admissions [under Rule 801(d)(2)(D)] must concern a matter within the scope of employment of the person making the statement." EEOC v. Con-Way Freight, Inc., 622 F.3d 933, 937 (8th Cir. 2010). There is no

---

[8] In their brief, the claimants argue that Gifford "somewhat changed the story he had told in his Declaration" when he testified at trial, and "watered down other testimony." (Appellants' Br. at 29.) At trial, however, the claimants never attempted to offer the declaration on the ground that parts of it contradicted Gifford's trial testimony. I note in passing that they were allowed to use the declaration to refresh Gifford's recollection. (See Tr. at 49-50.)

indication that the matters discussed in Gifford's declaration had any connection to his relationship with the trustee. On the contrary, the declaration states on its face that the matters discussed therein concern the services Gifford provided to AFY, Inc. and "to all entities owned by Robert A. Sears . . . and Korley B. Sears," including the claimants. (Bankruptcy Filing No. 531, Gifford Dec. ¶ 4. See also id. ¶¶ 5-12.) The declaration does not qualify as non-hearsay under Rule 801(d)(2)(D).

The claimants argue that AFY's ledger should have been admitted pursuant to Federal Rule of Evidence 803(6), which states that a record of a "regularly conducted activity" is not excluded by the rule against hearsay if: "(A) the record was made at or near the time by–or from information transmitted by–someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." According to the claimants, Gifford was a "qualified witness" within the meaning of this rule because he was "familiar with the record keeping system" of AFY, or, in other words, he was "someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted." (Appellants' Br. at 32, ECF No. 5.) The claimants add that Rule 803(6) does not require testimony from the ledger's custodian or author, and a "qualified witness" may be a person "who has no personal knowledge regarding the creation of the document." (Id. at 31-32.)

The claimants are correct that the "custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir. 2010). But the claimants "must put on a witness who can testify to the foundational facts required by the Rule." United States v. Riley, 236 F.3d 982, 985 (8th Cir. 2001). In other words, the witness must have personal knowledge that the record "was made at or near the time by–or from information transmitted by–someone with knowledge"; that it was "kept in the course of a regularly conducted activity of a business"; and that "making the record was a regular practice of that activity." Fed. R. Evid. 803(6).

Gifford testified that he was a public accountant who prepared income tax returns and financial statements for AFY beginning in 2002 or 2003. (Tr. at 20.) In performing these services,

he relied on records he obtained from AFY, and he believed his reliance on these documents was reasonable. (Id. at 21-22.) He knew that AFY's procedures and practices included the keeping of a general ledger, and he was "familiar with [some of] the entries from time to time in the general ledger." (Id. at 21.) He was not familiar with the accounting program that AFY used; indeed, he said he "can't run it." (Id. at 20.) He also said, however, that he became familiar "with the accounting system of AFY" and "the records that AFY would keep of financial transactions." (Id. at 23-24.) He was also "familiar with the assets and liabilities of AFY," and he saw some documents that were prepared by AFY showing liabilities to the claimants. (Id. at 22-23.) Finally, Gifford was able to recognize part of the general ledger during trial. (Id. at 32-35.)[9] Although the record shows that Gifford was aware that AFY kept a ledger, was able to identify it on sight, and was familiar with some of the entries on it, he did not testify that the ledger was "kept in the course of a regularly conducted activity" of AFY, that it was AFY's "regular practice" to make the ledger, or that the ledger's entries were "made at or near the time by–or from information transmitted by–someone with knowledge." Rule 803(6). Nor is there any indication that Gifford could have provided such testimony based on his own personal knowledge.

In essence, the claimants' theory is that "a certified public accountant who is reviewing trial balances prepared by the debtor, and who is preparing financial statements, and who is preparing income tax returns, is a qualified witness as to . . . whether the [ledgers] are prepared in the ordinary course of their business." (Tr. at 24.) But being qualified to put the ledgers to use is not the same as being qualified to testify about how the ledgers were made and kept. Gifford was not "qualified" to lay the foundation necessary under Rule 803(6).

In short, the bankruptcy court did not abuse its discretion by excluding Gifford's declaration and AFY's general ledger at trial.

### C.  The Bankruptcy Court's Decision to Sustain the Trustee's Objections and Disallow the Claims

---

[9] It also appears that he was able to recognize Northern Plains Feeders' general ledger. (Tr. at 47.)

17

The claimants argue that the bankruptcy court erred by sustaining the trustee's objections and finding that the claimants failed to prove the validity of their claims. (Appellants' Br. at 34-37, ECF No. 5; Appellants' Statement of Issues and Designation of Record at 1 ¶¶ 1-2, ECF No. 2-1.) After carefully reviewing the record, I find that the bankruptcy court's decision was not clearly erroneous. In re Brown, 82 F.3d 801, 804 (8th Cir. 1996), abrogated on other grounds by Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20 (2000) ("We . . . review the [bankruptcy court's] determination that a party has failed to satisfy its burden of proof under the clearly erroneous standard.").

DK Cattle argues that the preponderance of the evidence clearly shows that the debtor owed it $114,076. (Appellants' Br. at 36, ECF No. 5.)[10] More specifically, DK Cattle refers me to the following evidence in support of its claim: 1) Gifford's testimony that AFY's trial balances showed a liability to DK Cattle; 2) Gifford's declaration stating that AFY owed $114,076 to DK Cattle; 3) "testimony of Robert and Korley to the effect that AFY owes the debts claimed"; and 4) AFY's Schedule F and "the POC's themselves, which are of some evidentiary value." (Appellants' Br. at 35-37, ECF No. 5.) As the bankruptcy court correctly noted, however, Gifford had "no personal knowledge of any obligation owed by AFY to DK Cattle," (Bankruptcy Filing No. 618 at 4), and Robert and Korley Sears' testimony did not address this debt at all. Also, as I have explained above, Gifford's declaration was properly excluded from the record. The POC (as originally filed and as amended) is accompanied by no supporting documentation, and because AFY and DK Cattle are "insiders," AFY's Schedule F is not persuasive evidence of the existence of the debt. On the other hand, there is no evidence that DK Cattle's alleged loan to AFY, Inc., was made orally, and there are no documents (such as notes, bank records, checks, etc.) demonstrating the existence of any loan. Under the circumstances, the bankruptcy court properly concluded that the trustee's substantive objection (i.e., that no debt existed) should be sustained and that DK Cattle's claim should be denied.

---

[10] As noted previously, DK Cattle's POC lists the amount of the claim as $101,912. (See Claims 28-1, 28-2.)

Northern Plains Feeders argues that the preponderance of the evidence shows that AFY, Inc. owed it $250,000, and Dakota-Nebraska Feeders argues that the preponderance of the evidence shows that AFY, Inc. owed it $54,931. (Appellants' Br. at 36, ECF No. 5.) Like DK Cattle, Northern Plains Feeders and Dakota-Nebraska Feeders argue that their claims are supported by Gifford's declaration (which was not received in evidence), AFY's Schedule F, and the creditors' POCs. (Id. at 35, 37.) For the reasons explained previously, these documents do not establish the validity of the claims. They also refer me to Northern Plains Feeders' 2010 tax return showing a loan receivable in the amount of $250,000, and to Dakota-Nebraska Feeders' 2010 tax return showing a loan receivable in the amount of $118,000. (Id. at 36.) But because neither of these tax returns shows that the loans were debts owed to the claimants by AFY, Inc., (see Bankruptcy Filing Nos. 597, 602), they are not helpful. Next, the claimants refer me to Gifford's work papers, which indicate that "AFY owed debts to Northern Plains Feeders and Dakota-Nebraska Feeders . . . in the same amounts as [indicated in] Gifford's Declaration." (Tr. at 36.) As the bankruptcy court correctly noted, however, the work papers bore notes indicating that the "money went to AFY, LLC," as opposed to the debtor, and they raised ambiguities about the nature of the obligations. (Bankruptcy Filing Nos. 587-588. See also Tr. at 39-42, 53-56, 58-60, 61-62.) Finally, the claimants submit that Robert and Korley Sears testified "to the effect that AFY owes the debts." (Appellants' Br. at 36, ECF No. 5.) Robert Sears did testify that Northern Plains Feeders and Dakota-Nebraska Feeders loaned money directly to "AFY," (Tr. at 70-71, 76-78), but he did not clarify whether he was referring to AFY, Inc. (the debtor) or AFY, LLC. The bankruptcy court concluded that, in light of the ambiguities in Gifford's and Robert Sears' testimony and in the work papers, Northern Plains Feeders and Dakota-Nebraska Feeders "failed to meet [their] burden of persuasion as to the validity and amount of their claims." (Bankruptcy Filing No. 618 at 5-6 (footnote omitted).) This decision was not clearly erroneous.

The claimants argue that the trustee's substantive objection that "the debtor was not indebted to the claimant[s]" should not have been sustained because it "is a camouflaged effort to recharacterize the debts owed by AFY to the Appealing Claimants as equity." (Appellants' Br. at 19, ECF No. 5. See also id. at 19-22; Appellants' Reply Br. at 2-5, 7-8, 16-17, ECF No. 9.) This argument is without merit. In the first place, the existence of a debt was never established; thus, no finding was made (or need have been made) that the debt would be "recharacterized" as equity. It

19

is true that the trustee supported his objection in part with evidence suggesting that Northern Plains Feeders and Dakota-Nebraska Feeders made equity contributions rather than loans to AFY, but I fail to see how this evidence somehow relieves the claimants of their burden of proving the validity of their claims by a preponderance of the evidence. The trustee called into doubt the existence of debts owed by AFY, Inc. to the claimants, and the claimants failed to satisfy their burden to prove that the debts did, in fact, exist.

**IT IS ORDERED** that the bankruptcy court's order of June 6, 2012, (Bankruptcy Filing No. 618), is affirmed.

Dated October 16, 2012.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge